**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000600
28-FEB-2020
07:50 AM**

NO. CAAP-18-0000600

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
RAMONCITO D. ABION, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2PC161000043)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Chan, JJ.)

Defendant-Appellant Ramoncito D. Abion (Abion) appeals from the "Judgment; Conviction and Sentence; Notice of Entry" (Judgment of Conviction), filed on June 13, 2018, and the "Stipulation and Order to Amend Judgment of Conviction Filed June 13, 2018" (Order to Amend Judgment of Conviction), filed on July 26, 2018, in the Circuit Court of the Second Circuit (circuit court).[1]

## I. Background

On January 13, 2016, Plaintiff-Appellee State of Hawai'i (State) charged Abion with one count of Assault in the Second Degree in violation of Hawaii Revised Statutes (HRS)

---

[1] The Honorable Richard T. Bissen, Jr. presided.

§ 707-711(1)(a) and/or (b) and/or (d),[2] alleging that on or about January 11, 2016, Abion intentionally, knowingly, or recklessly caused substantial bodily injury to Temehane Visaya (Visaya) with a dangerous instrument.

On March 8, 2016, Abion filed a "Motion for H.R.S. § 704-404[3] Examination" to determine his fitness to proceed to trial and whether he could be held penally responsible for his conduct. The circuit court granted the motion. All three examiners unanimously found Abion fit to proceed to trial. Two of the examiners reported that, as to penal responsibility, Abion's cognitive and volitional capacities were not substantially impaired at the time of the alleged offense.

---

[2]  HRS § 707-711 (2014) provides in relevant part:

**§707-711 Assault in the second degree.** (1) A person commits the offense of assault in the second degree if:

(a)  The person intentionally or knowingly causes substantial bodily injury to another;

(b)  The person recklessly causes serious or substantial bodily injury to another;

. . .

(d)  The person intentionally or knowingly causes bodily injury to another with a dangerous instrument[.]

[3]  HRS § 704-404 (2014) provides in relevant part:

**§704-404 Examination of defendant with respect to physical or mental disease, disorder, or defect.** (1) Whenever the defendant has filed a notice of intention to rely on the defense of physical or mental disease, disorder, or defect excluding responsibility, or there is reason to doubt the defendant's fitness to proceed, or reason to believe that the physical or mental disease, disorder, or defect of the defendant will or has become an issue in the case, the court may immediately suspend all further proceedings in the prosecution. . . .

(2) Upon suspension of further proceedings in the prosecution, the court shall appoint three qualified examiners in felony cases . . . to examine and report upon the physical and mental condition of the defendant. In felony cases the court shall appoint at least one psychiatrist and at least one licensed psychologist. The third member may be a psychiatrist, licensed psychologist, or qualified physician.

However, the third examiner, Martin Blinder, M.D. (Dr. Blinder), reported that "[t]here are ample clinical grounds for a robust mental defense of the charges" based on his assessment that although Abion's past methamphetamine use may have caused a psychosis that led Abion to attack Visaya, "he was not strictly speaking under the influence of voluntarily ingested drugs at the time of the offense." Neither the State nor Abion contested the findings of the reports. On August 9, 2016, the circuit court found Abion fit to proceed.

On September 22, 2017, the State filed its "Motion for Finding of Inadmissibility of HRS 704-400[4] Defense" (Motion for Inadmissibility Finding), requesting an evidentiary hearing on the admissibility of testimony from Dr. Blinder. The State expected Dr. Blinder to testify that Abion's conduct was the result of methamphetamine psychosis. The State argued that Dr. Blinder's testimony would be irrelevant and should be precluded under Hawai'i Rules of Evidence (HRE) Rule 104[5]

---

[4] HRS § 704-400 (2014) provides:

§704-400 **Physical or mental disease, disorder, or defect excluding penal responsibility.** (1) A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

(2) As used in this chapter, the terms "physical or mental disease, disorder, or defect" do not include an abnormality manifested only by repeated penal or otherwise anti-social conduct.

[5] HRE Rule 104 (2016) provides in relevant part:

(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b). In making its determination the court is not bound by the rules of evidence except those with respect to privileges.

because, pursuant to HRS § 702-230(3),[6] intoxication does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of HRS § 704-400.

An evidentiary hearing was held on October 6, 2017, at which time the circuit court qualified Dr. Blinder as an expert in the field of psychiatry and to render an opinion as to whether an individual is suffering from a physical or mental disease, disorder, or defect. At the hearing, Dr. Blinder testified that he had examined Abion and diagnosed him with methamphetamine psychosis, which was largely in remission at the time of examination. Dr. Blinder elaborated that methamphetamine

> is a recreational substance which does a lot more than what the people who are inclined to take this drug think it will do. That is, in addition to giving you more energy and at least temporarily a certain mental clarity, over time it causes structural changes in the brain, yet subtle, but powerful enough to render somebody periodically psychotic. And, in fact, since these changes in the brain are permanent long after they have given up methamphetamines, they continue to have paranoid thoughts, they continue to be susceptible to auditory hallucinations and other abhorrent qualities that are characteristic of people with psychoses.

Dr. Blinder stated that he did not believe that everyone suffers from structural changes in the brain from long-term methamphetamine use, but agreed that

> people with an absolutely clean genetic makeup can develop methamphetamine psychoses . . . . [b]ut there are also people who carry genetic markers for mental illnesses that may not by themselves be enough to manifest the disease, but when they take methamphetamine over extended periods of time, it may cause that mental illness to manifest[.]

Dr. Blinder opined that in Abion's case, Abion carried some sort of genetic predisposition to psychosis that manifested with his prolonged use of methamphetamine, and that to a reasonable degree of medical probability, he would not have developed the psychosis absent his use of methamphetamine. Dr. Blinder testified that his conclusion was based on: Abion stating that he had an aunt

---

[6] HRS § 702-230(3) (Supp. 2016) provides: "Intoxication does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of section 704-400."

4

who spent time in a mental hospital, how well Abion was doing prior to getting into methamphetamine, and the late blossoming of the psychosis.  The court then questioned Dr. Blinder about whether the aunt was determined to be a blood relative, as follows:

> THE COURT:  Did you try to determine [whether the aunt Abion spoke of was a blood relative]?
>
> THE WITNESS:  I did not, and if it's not a blood relative, then it's totally irrelevant.
>
> THE COURT:  Okay.  So how does that change your opinion if it's not a blood relative?
>
> THE WITNESS:  It doesn't change it, it just pulls out from under my conclusions one of its bases, so it makes me less confident that this man is carrying some sort of low grade genetic endowment that predisposes him for psychoses.  It shifts all of the responsibility onto the methamphetamine, since I have indicated earlier, there are some unlucky people with no genetic predisposition, they use these drugs, and that's enough to send them into a mental hospital.

Dr. Blinder also opined that based on looking at the paperwork and talking to Abion, Abion was "not, quote, under the influence of or intoxicated with the methamphetamine, but rather was suffering from its permanent or long-term effects" at the time of the alleged offense.

On November 11, 2017, the circuit court filed its "Findings of Fact, Conclusions of Law, and Order Granting State's Motion for Finding of Inadmissibility of HRS 704-400 Defense" (Order Granting Motion for Inadmissibility Finding), in which it made the following conclusions of law (COLs):

> 1.  Preliminary questions concerning the admissibility of evidence shall be determined by the court.  H.R.E. 104(a).
>
> 2.  Intoxication does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of HRS Section 704-400.  H.R.S. 702-230(3).
>
> 3.  Intoxication is not a defense to any offense, unless specifically provided for in H.R.S. § 702-230.[7]

---

[7]     HRS § 702-230 (Supp. 2016) prohibits the use of self-intoxication as a defense under HRS § 704-400, by providing that:

4. A drug-induced or exacerbated mental illness does not constitute a defense. State v. Young, 93 Hawai'i 224, 232, 999 P.2d 230, 238 (2000).

5. Dr. Blinder's testimony that Defendant was suffering from a psychosis caused by long-standing drug abuse does not constitute a defense.

6. Further, Defendant cannot now benefit from long-term drug abuse by asserting that the voluntary damage he did to his body now constitutes a defense.

§702-230 Intoxication. (1) Self-induced intoxication is prohibited as a defense to any offense, except as specifically provided in this section.

(2) Evidence of the nonself-induced or pathological intoxication of the defendant shall be admissible to prove or negative the conduct alleged or the state of mind sufficient to establish an element of the offense. Evidence of self-induced intoxication of the defendant is admissible to prove or negative conduct or to prove state of mind sufficient to establish an element of an offense. Evidence of self-induced intoxication of the defendant is not admissible to negative the state of mind sufficient to establish an element of the offense.

(3) Intoxication does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of section 704-400.

(4) Intoxication that is:

(a) Not self-induced; or

(b) Pathological,

is a defense if by reason of the intoxication the defendant at the time of the defendant's conduct lacks substantial capacity either to appreciate its wrongfulness or to conform the defendant's conduct to the requirements of law.

(5) In this section:

"Intoxication" means a disturbance of mental or physical capacities resulting from the introduction of substances into the body.

"Pathological intoxication" means intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant does not know the defendant is susceptible and which results from a physical abnormality of the defendant.

"Self-induced intoxication" means intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which to cause intoxication the defendant knows or ought to know, unless the defendant introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of a penal offense.

> 7.  Therefore, Dr. Blinder's testimony is not relevant pursuant to H.R.E. 104, and shall not be admissible at trial.

On February 28, 2018, Abion filed a "Notice of Intention to Rely on HRS Chapter 704 Defense and Call Dr. Martin Blinder to Testify" (Notice of Intent).  In response, the State filed "State's Motion in Limine No. 2" on March 1, 2018, requesting that the circuit court issue

> [a]n order precluding the defense from introducing any testimonial or documentary evidence that is inconsistent with and/or contrary to and/or irrelevant in light of the Court's ruling in its Findings of Fact, Conclusions of Law and Order Granting State's Motion for Finding of Inadmissibility of HRS 704-400 Defense, filed on November 11, 2017.

On March 2, 2018, the circuit court held a hearing on several pre-trial motions, including State's Motion in Limine No. 2.  Abion noted that the purpose of filing the Notice of Intent was to make the record clear that he believed that he was entitled to use an HRS § 704-400 defense and intended to do so. The circuit court held that, based on its ruling in the Order Granting Motion for Inadmissibility Finding, voluntary intoxication on the part of the defendant is not a defense and Dr. Blinder was precluded from testifying as to Abion being under self-induced methamphetamine conditions.  The circuit court clarified that its ruling did not preclude Abion from presenting an HRS § 704-400 defense or from eliciting evidence of the condition in which Abion was found on the day of the incident. The circuit court explained that it was only precluding Dr. Blinder from testifying that Abion was "under a self-induced methamphetamine condition" and "call[ing] it a mental defense, because that, [the circuit court] find[s], it's not."  The circuit court granted State's Motion in Limine No. 2 and denied Abion's Notice of Intent.

The jury trial commenced on March 19, 2018.[8]  During trial, the court's preclusion of Dr. Blinder's testimony arose in discussions with the parties, outside the presence of the jury.[9] The court provided the jury with instructions on the affirmative defense of physical or mental disease, disorder, or defect, excluding penal responsibility.

Following the trial, the jury found Abion guilty as charged.  On June 13, 2018, the circuit court entered its Judgment of Conviction, sentencing Abion to five years of incarceration and various fees and conditions, and on July 26, 2018, entered its Order to Amend Judgment of Conviction to remove the order for restitution.  Abion timely filed his Notice of Appeal on July 30, 2018.

## II.  Points of Error

On appeal, Abion argues that he was deprived of a fair trial when the circuit court precluded him from presenting to the jury, "testimonial evidence through Dr. Blinder that at the time of the assault[, Abion] had been suffering from a physical or mental disease, disorder, or defect," which would exclude penal responsibility.  Abion asserts that the circuit court committed this error at two junctures: first, when it granted the State's Motion for Inadmissibility Finding; and second, when it granted

---

[8]    There appears to be a typographical error in the Transcripts of Proceedings as to the dates of the trial.  The Transcripts of Proceedings initially indicate the trial being held on October 19, 2018, and October 20, 2018, but the parties indicate that the trial occurred on March 19, 2018, and March 20, 2018, and the remainder of the Transcripts of Proceedings also states that the trial occurred on March 19, 2018, and March 20, 2018.  It is thus presumed that trial occurred on March 19, 2018, and March 20, 2018.

[9]    The court's preclusion of Dr. Blinder's testimony arose when the State objected to defense counsel's questioning of a witness as to whether he had seen Abion acting strangely prior to the date of the offense.  The State objected as to relevance and improper character evidence.  Defense counsel argued that while the court had "previously ruled that Dr. Blinder was precluded, . . . the [c]ourt stated the record wouldn't be sanitized as far as Mr. Abion has displayed mental health issues."

Later in the trial, the circuit court referenced its ruling on State's Motion in Limine No. 2 and reiterated for the record that it "did not preclude the [d]efense [under HRS § 704-400], just the witness, and . . . Dr. Blinder was not the only way the [d]efense could be inserted into this case."

the State's Motion in Limine No. 2 and denied Abion's Notice of Intent.

### III. Discussion

Abion challenges the circuit court's determination that Dr. Blinder's testimony was not relevant to a defense under HRS §§ 702-230 and 704-400, a decision we review de novo. See State v. Wakisaka, 102 Hawai'i 504, 514, 78 P.3d 317, 327 (2003) ("A trial court's determination of relevance pursuant to Hawai'i Rules of Evidence (HRE) Rule 401 (1993) can produce only one correct result, and is therefore reviewable under the right/wrong standard." (footnote omitted)); State v. Vliet, 95 Hawai'i 94, 106-107, 19 P.3d 42, 54-55 (2001) ("Because the court's inquiry under HRE Rule 702 is like that involved in deciding the relevancy of evidence under HRE Rules 401 and 402, we employ the right/wrong standard in reviewing challenges to a court's relevancy decision under HRE Rule 702"). Accordingly, Abion argues that the circuit court erred in granting the State's pre-trial Motion for Inadmissibility Finding and in denying Abion's Notice of Intent based on this conclusion. Abion specifically challenges the following COLs in the court's Order Granting Motion for Inadmissibility Findings:

> 4. A drug-induced or exacerbated mental illness does not constitute a defense. State v. Young, 93 Hawai'i 224, 232, 999 P.2d 230, 238 (2000).
>
> 5. Dr. Blinder's testimony that Defendant was suffering from a psychosis caused by long-standing drug abuse does not constitute a defense.
>
> 6. Further, Defendant cannot now benefit from long-term drug abuse by asserting that the voluntary damage he did to his body now constitutes a defense.
>
> 7. Therefore, Dr. Blinder's testimony is not relevant pursuant to H.R.E. 104, and shall not be admissible at trial.

We review these COLs under the right/wrong standard. State v. Edwards, 96 Hawai'i 224, 231, 30 P.3d 238, 245 (2001).

Abion first asserts that the circuit court erred in relying on Young. In Young, the defendant was charged with

9

murder in the second degree for striking another man with a hammer, resulting in the man's death. Young, 93 Hawai'i at 226-27, 999 P.2d at 232-33. A panel of examiners concluded that the defendant was fit to proceed to trial but opined that he should not be held penally responsible. Id. at 227, 999 P.2d at 233. During the bench trial, the panel members each testified that the defendant suffered from some sort of psychosis that caused him to lack the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the law, but that the defendant was not under the influence of drugs or alcohol at the time of the offense. Id. at 228, 999 P.2d at 234. A forensic and clinical psychologist who was not on the examination panel testified that her tests indicated that the defendant was not schizophrenic and that his psychosis was caused by drugs and alcohol. Id. at 228-29, 999 P.2d at 234-35. However, the psychologist admitted that "it is unclear if [the defendant] suffers from an underlying schizophrenic process that was merely exacerbated by his substance abuse, or if years of using drugs and drinking have resulted in a disorder that mimics paranoid schizophrenia." Id. at 229, 999 P.2d at 235. Another witness, a forensic and clinical neuropsychologist, testified that methamphetamine can cause symptoms similar to those experienced by schizophrenics, which could last for weeks or months after the person stops abusing the drug. Id.

The trial court adjudged the defendant guilty as charged, determining, in relevant part, that: the defendant had been voluntarily drinking alcohol and smoking marijuana in the weeks leading up to the incident, had been using other illegal drugs during that time, and that psychosis caused by drugs can last for months after drug use has stopped. Id. at 230, 999 P.2d at 236. The court also found that the defendant was not schizophrenic and that he suffered from a mental disease or defect that was caused by drugs and/or alcohol, and therefore, the defendant's mental disease or defect did not cause him to

lack the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. Id.

On appeal, the defendant in Young argued that a drug-induced or exacerbated mental illness, in and of itself, can constitute a defense to a criminal charge. Id. at 231, 999 P.2d at 237. The supreme court determined that "[t]he issue of a preexisting mental illness that is aggravated by drug abuse is not presented in this case" because "[t]he trial court found that [the defendant's] mental disease, disorder, or defect was caused by substance abuse." Id. at 231-32, 999 P.2d at 237-38. The supreme court then rejected the defendant's argument that a drug-induced mental illness is a defense, "because to [adopt that argument] would be contrary to the legislative intent underlying HRS §§ 702-230 and 704-400." Id. at 232, 999 P.2d at 238. The court reasoned:

> In 1986, the legislature added subsection (1) to HRS § 702-230, specifically prohibiting self-induced intoxication as a defense except in limited circumstances. 1986 Haw. Sess. L. Act 325, § 2 at 687-88. The conference committee stated that it "believes that when a person chooses to drink, that person should remain ultimately responsible for his or her actions." Conf. Comm. Rep. No. 36, in 1986 House Journal, at 928. HRS § 702-230(3) provides that intoxication alone cannot negate penal responsibility under HRS § 704-400. To adopt the rule suggested by Young would be contrary to this statutory scheme. If an intoxicated person cannot escape ultimate responsibility for his actions, neither should a defendant who chronically engages in substance abuse. Only in the instance when the intoxication causes the person to lack the ability to form the requisite state of mind is intoxication a defense. The same is also true of someone with a drug-induced mental illness.

Id.

In this case, Dr. Blinder diagnosed Abion with methamphetamine psychosis. Dr. Blinder opined that Abion was not "under the influence of or intoxicated with the methamphetamine" at the time of the offense but "was suffering from its permanent or long-term effects." Dr. Blinder essentially came to two alternative conclusions: (1) Abion carried some sort of genetic

11

predisposition to psychosis that manifested with his prolonged use of methamphetamine; or (2) Abion's psychosis was fully caused by his prior substance abuse.

On appeal, Abion argues that Dr. Blinder's testimony established that Abion suffered from drug-exacerbated psychosis -- in other words, "[h]is psychosis appears to have existed prior to his chronic drug use, but did not manifest itself until after he started using methamphetamine." Thus, he argues, this genetic predisposition constituted a "preexisting condition" that existed independently and apart from his drug use and is a defense under HRS § 704-400. We find no merit to this contention.

Dr. Blinder did not provide any evidentiary support for his conclusion that Abion carried a genetic predisposition to psychosis. Dr. Blinder primarily relied on Abion's statement that he had "an auntie who spent a lot of time in a mental hospital" and came to the conclusion that therefore "in [Abion's] genetic pool there's something floating in there that he'd be better off if he didn't carry it." When questioned by the circuit court, however, Dr. Blinder admitted that he did not determine if Abion's aunt was a blood relative. Dr. Blinder testified that even if the auntie was not a blood relative, his diagnosis of methamphetamine psychosis would not change and an absence of a genetic predisposition to psychosis would simply "shift[] all of the responsibility onto the methamphetamine[.]" Even assuming Abion carried a genetic predisposition for psychosis, Dr. Blinder stated that Abion's "prolonged meth use . . . brought it out[.]"

Regardless of whether Abion did indeed have a genetic predisposition for psychosis, Dr. Blinder repeatedly testified that, absent the long-term abuse of methamphetamine, Abion's psychosis would not have manifested. Thus, Dr. Blinder's testimony does not establish that this was a case of drug-exacerbated mental illness, despite Abion's argument on appeal to the contrary. Rather, Dr. Blinder's testimony established that

Abion suffered from a drug-induced psychosis, i.e., his psychosis was caused by the long-term drug use. As provided in Young, a drug-induced mental illness does not constitute a defense. Id. Accordingly, the circuit court did not err in concluding that Dr. Blinder's testimony was not relevant to establish a defense under HRS §§ 702-230 and 704-400, and in precluding Dr. Blinder from testifying that Abion was suffering from a psychosis caused by Abion's long-term abuse of methamphetamine.[10] COLs 5-7 in the Order Granting Motion for Inadmissibility Finding are correct. The circuit court did not err in granting the Motion for Inadmissibility Finding and State's Motion in Limine No. 2 and in denying Abion's Notice of Intent.

To the extent that the circuit court cited Young in COL 4 of the Order Granting Motion for Inadmissibility Finding for the proposition that a drug-exacerbated mental illness does not constitute a defense, we conclude that this was error. The supreme court in Young expressly rejected the defendant's argument that a drug-induced mental illness is a defense, but noted that "[t]he issue of a preexisting mental illness that is aggravated by drug abuse [was] not presented in [that] case" and therefore did not address whether a drug-exacerbated mental illness constitutes a defense. Id. However, the error was harmless, see Hawai'i Rules of Penal Procedure Rule 52(a), as it did not affect Abion's substantial rights in light of our conclusion that Dr. Blinder's testimony only served to establish that Abion's psychosis was caused by his long-term abuse of methamphetamine and was not relevant to establish a possible defense founded upon any drug-exacerbated mental illness.

---

[10] Abion also argues that a drug-induced disease, disorder, or defect may excuse a defendant's criminal conduct if it continues to exist when the defendant is no longer under the influence of the drug. This argument is also precluded under Young. In this case, as was the case in Young, Abion was found not to be under the influence of any intoxicants at the time of the offense. Nevertheless, permitting Abion to assert a voluntarily drug-induced mental illness as a defense "would be contrary to the legislative intent underlying HRS §§ 702-230 and 704-400." Id.

Abion also asserts that whether self-intoxication precluded Abion's insanity defense was a question for the jury to decide and therefore, the circuit court erred by precluding Dr. Blinder's testimony. Abion directs us to State v. Eager, 140 Hawai'i 167, 176-77, 398 P.3d 756, 765-66 (2017), in which the supreme court held that

> when a defendant both a) knowingly ingests an intoxicating substance, the tendency of which to cause intoxication the defendant knows or ought to know, and b) experiences mental disease, disorder, or defect, the trier of fact must determine whether the mental disturbance would excuse the defendant's criminal conduct absent the influence of the intoxicant.

Abion argues that the jury, as trier of fact, was required to reconcile evidence of a physical or mental disease, disorder, or defect, with evidence of self-induced intoxication to determine whether the disease, disorder, or defect, would excuse the defendant's criminal conduct absent the influence of the intoxicant. Abion further asserts that Eager's instruction indicated a recognition of the defense of "settled insanity" and implicitly overruled Young.

Abion's reliance on Eager is misplaced. In Eager, the defendant, charged with assault in the second degree, asserted the defense of lack of penal responsibility due to a physical or mental disease, disorder, or defect, arguing that he was experiencing a psychotic episode at the time of the offense. Id. at 168, 398 P.3d at 757. The trial court found the defendant guilty as charged, rejecting the defense under HRS § 702-230 by concluding that "any disease, disorder, or defect the Defendant may have been suffering from at the time of the assault was self-induced and the product of the Defendant's refusal to take his prescribed medication and his use of marijuana." Id. On appeal, the supreme court held that "the circuit court's holding that [the defendant]'s failure to take his medication caused his psychotic behavior is inconsistent with the plain language of the statute, which requires the introduction of substances into the

14

body." Id. at 169, 398 P.3d at 758 (emphasis in original). Because the trial court based its finding of criminal responsibility on both the defendant's smoking marijuana and his failure to take prescribed medication, without distinguishing the effects of either, the supreme court held the fact finder had to determine "whether the mental disturbance would excuse the defendant's criminal conduct absent the influence of the intoxicant." Id. at 177, 398 P.3d at 766.

Eager presented a case where there was no evidence or finding in the bench trial that substance abuse caused the defendant's mental disease, disorder, or defect. As discussed supra, Dr. Blinder's testimony provided that Abion's psychosis was caused by his methamphetamine use and did not establish that Abion suffered from any separate organic mental defect. Similarly, in Young, the trial court concluded that the defendant's mental illness was caused by the use of intoxicants. Thus, Eager is distinguishable from the instant matter as well as Young. Eager did not overrule Young in any way. Rather, Young remains good law and governs here.

### IV. Conclusion

For the foregoing reasons, we affirm the June 13, 2018 Judgment of Conviction and the July 26, 2018 Order to Amend Judgment of Conviction.

DATED: Honolulu, Hawai'i, February 28, 2020.

On the briefs:

Gerald K. Enriques,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Benjamin E. Lowenthal,
Deputy Public Defender,
for Defendant-Appellant.

Chief Judge

Associate Judge

Associate Judge

15